UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:07-440-KKC

PATRICIA FAYE MIRACLE and
LUTHER D. MIRACLE,                                                                          PLAINTIFFS

v.                                      **OPINION AND ORDER**

WAL-MART STORES EAST, LP,                                                        DEFENDANT

* * * * * * * * *

This matter is before the Court on the Motion for Summary Judgment filed by the Defendant Wal-Mart Stores East, LP (DE 18).

Plaintiff Patricia Faye Miracle asserts that she was injured when an overhead door behind a Wal-mart store hit her on the head when it was closing. The Plaintiffs assert a negligence claim against Wal-mart. Wal-mart moves for summary judgment asserting that Mrs. Miracle was a trespasser at the time of the incident and, thus, it is not liable for any damages caused by negligence. The issue on this motion is whether Mrs. Miracle was a trespasser or a licensee at the time of the incident.

### I.      FACTS.

Mrs. Miracle testified in her deposition that she went to Wal-mart to get some boxes for her daughter who was moving. She testified that she was alone and drove around to the back of the store. She testified that she went to the back because that is what she always did when she went to stores to get boxes. She testified that she thought boxes would be in dumpsters which are located behind stores.

Mrs. Miracle testified that she usually asks a person inside a store before going to the dumpsters to get boxes but, on this day, she did not have much time so she went around to the back of the store without asking anyone inside Wal-mart.

Mrs. Miracle testified that, once she was in the back of Wal-mart, she parked her car and walked around to find someone to aks for boxes. She testified that she saw a man in a truck. She testified that she explained to the man that she needed boxes for moving. She testified that she did not know if the man in the truck was a Wal-mart employee or not.

Mrs. Miracle testified that the man told her to ring a bell by a door in the rear of the store and that the door would open and she could go into the back of the store. She testified that, when she approached the door, a second man stepped in front of her and rang the bell and that, when he did so, the door came up. (Rec. No. 22, P. Miracle Dep. at 31, 36, 37).

Mrs. Miracle testified that the man went through the door and that she followed him. She testified that thick plastic covered the door opening and that she started to pull it back. She testified she heard a woman scream, "stop" to a boy standing nearby, and that the door came down, hit her on the head, and "bent me double and I went backwards."

Mrs. Miracle testified that the woman who had screamed "stop," came over to her and asked why she was there. Mrs. Miracle testified that she told the woman she was looking for boxes. Mrs. Miracle testified that she believes the woman brought her into the door and walked her back out.

Pam Cornelius has been a Direct Store Delivery clerk at the London Wal-mart for ten years. She testified in her deposition that she "checks in" the merchandise that vendors bring to the store and that she was working on the date of the incident. Cornelius states in an affidavit that the door that Mrs. Miracle attempted to enter was a rear grocery receiving dock door where vendors deliver

2

and unload their products. In her deposition, Cornelius testified that the door is a garage-door style door that goes up and down and is made of metal.

Cornelius testified that the door is manually lifted up and down. She testified that the door could be lifted up by pulling on a rope but that she always bends over and picks the door up. She testified that, once the door is lifted up, it stays up. She testified that she usually pulls down on the rope to close the door and keeps one hand on the door to guide it. Cornelius testified that there are plastic strips that hang in front of the door.

Cornelius testified that vendors come to the door and ring the buzzer. She testified that customers are not allowed in the back of or behind the store. She also testified that there are no signs outside the door indicating that the door is only for employees and vendors.

Cornelius testified that, on the day of the incident, a Keebler vendor rang the buzzer. She testified that her co-worker, Eric Jackson, lifted the door and the vendor came in. She testified that she walked away with the vendor and that, when she turned back around, she saw the door coming down and yelled stop. Cornelius testified that the door hit Mrs. Miracle on the head.

Cornelius testified that she ran toward Mrs. Miracle and that Mrs. Miracle told her she was looking for boxes. Cornelius testified that she looked around for boxes but that all had been crushed.

Cornelius testified that Wal-mart gave customers boxes "on occasion." She testified that customers normally would call the service desk and request the boxes and that the customer would pick up the boxes at the service desk. Cornelius testified that she had never seen anyone come to the back of the building to get boxes before. Cornelius testified that "on occasion maybe" customers would go to a door in the back of the store to pick up larger merchandise they had purchased. She testified that she had seen a customer carry merchandise through the same door that injured Mrs.

3

Miracle but that it had been over a year since she last saw that occur and that it was not "normal practice."

Cornelius also testified that, at one time, the store had a layaway area that was in the back of the store and that, during that time period, customers would have picked up layaway merchandise in the back of the store at a door down from the grocery receiving dock door. However, Cornelius testified that she had no reason to expect a customer to be in the back of the store and that it was not "common practice."

Eric Jackson, a Wal-mart employee, testified that it is Wal-mart's policy that no customers are supposed to be near the back room or behind the store. He testified that he had never given customers boxes.

Jackson testified that the only time customers ever came to the back of the store was when the store had layaway. At that time, customers did not ring the buzzer. Instead Wal-mart employees would be informed that the customer was coming around to the back of the building and the employees would load the customer's merchandise into the customer's vehicle. He testified the layaway pick up area was "nowhere near" the grocery receiving dock door.

Jackson testified that in the seven years he had been employed at Wal-mart, he had never seen a customer in the back of the store or in the back room other than Mrs. Miracle on the day of the incident at issue.

Jackson testified that, on the day of the incident, he was in the back room. While Cornelius testified that Jackson opened the door after the Keebler vendor rang it, Jackson testified that the door was already open when he came into the back room and that he believed Cornelius opened it because she was the only one with the keys to it. Jackson testified that the door is supposed to be shut right

after the vendor enters. Jackson testified that, after the vendor walked in, Cornelius asked Jackson to shut the door. He said he glanced around, did not see anybody else, and grabbed the rope and pulled it.

He testified that the door got halfway down and that he saw Mrs. Miracle bent down trying to get under the door before it shut. He testified that he does not think he saw the door hit Mrs. Miracle. He also testified, however, that the door did hit Mrs. Miracle.

## II. STANDARD ON SUMMARY JUDGMENT.

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id.* However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). The Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp.,* 822 F.2d at 1435-36. Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

"The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re*

6

*Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

### III. ANALYSIS.

To prevail on a negligence claim, the plaintiff must prove three elements: 1) a duty on the party of the defendant to the plaintiff; 2) breach of that duty; and 3) consequent injury. *M&T Chemicals, Inc. v. Westrick*, 525 S.W.2d 740, 741 (Ky. 1974).

#### A. Duties of Landowners to Trespassers and Licensees.

"Historically visitors upon property have been placed in one of three categories, viz., trespassers, licensees or invitees." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996)(quoting *Hardin v. Harris*, 507 S.W.2d 172, 174-75 (1974)). A person who comes on the land without any legal right to do so is a trespasser. *Id*. A person who comes on the land with the consent of the possessor is a licensee. *Id*. A person who comes on the land "in some capacity connected with the business of the possessor" is an invitee. *Id*.

The status of the person coming onto the land determines the degree of care required by the land possessor. *Whelan v. Van Natta*, 382 S.W.2d 205, 206 (Ky. 1964). The classifications of "trespasser," "licensee," and "invitee" are "simply convenient classifications for defining certain basic assumptions appropriate to the duty of the party in possession in the circumstances." *Perry v. Williamson*, 824 S.W.2d 869, 875 (Ky. 1992). "These classifications help to define the real issue, which is what is reasonable care under the circumstances?" *Id*.

In its Motion for Summary Judgment, Wal-mart argues that Mrs. Miracle was a trespasser and, thus, pursuant to Section 381.232 of the Kentucky Revised Statutes, Wal-mart can only be liable for injuries that it intended to cause her. That statute provides that "[t]he owner of real estate shall not be liable to any trespasser for injuries sustained by the trespasser on the real estate of the owner,

except for injuries which are intentionally inflicted by the owner or someone acting for the owner." KRS 381.232.  A "trespasser," is defined as "any person who enters or goes upon the real estate of another without any right, lawful authority or invitation, either expressed or implied, but does not include persons who come within the scope of the 'attractive nuisance' doctrine." KRS 381.231(1).[1]

The Plaintiffs argue that Mrs. Miracle was not a trespasser but was, at least, a licensee.  A "licensee" enters upon the premises owned by another "by express invitation or implied acquiescence of the owner or occupant solely on the licensee's own business, pleasure or convenience." *Scuddy Coal Co. v. Couch*, 274 S.W.2d 388, 390 (Ky. 1955). A  landowner owes a licensee the "duty of reasonable care either to make the land as safe as it appears, or to disclose the fact that it is as dangerous as he knows it to be." *Scifres*, 916 S.W.2d at 781 (citing *Perry*, 824 S.W.2d at 874).

"There is no duty to warn a licensee of any danger or condition which is open and obvious or which should or could be observed by the licensee in the exercise of ordinary care." *Id*. (citing *Shipp v. Johnson*, 452 S.W.2d 828, 830 (Ky. 1969)).  "[T]he basic distinction between the duties of the possessor is that he owes an invitee the duty of discovering a dangerous condition, whereas he owes a licensee only the duty to warn him of a dangerous condition *already known* to the possessor." *Mackey v. Allen*, 396 S.W.2d 55, 58 (Ky. 1965).[2]

There is no question that, had Mrs. Miracle entered the customer entrance of the Wal-mart store to shop, she would be classified an "invitee." However, Mrs. Miracle did not enter the customer entrance of the store.  Nor was she at Wal-mart to shop.  Instead, she entered a vendor entrance in

---

[1] The Plaintiffs do not argue that the attractive nuisance exception applies in this case and the parties have cited no evidence in the record indicating that it applies.

[2] Wal-mart has not argued on summary judgment that it fulfilled its duty as a licensor to Mrs. Miracle.  It argues only that Mrs. Miracle was not a licensee but was instead a trespasser.

the back of the store in search of boxes. The issue raised by Wal-mart's motion is whether those actions make her a licensee or a trespasser.

> **B.     Whether Mrs. Miracle was a Trespasser or a Licensee when she Entered the Grocery Receiving Dock Door Behind Wal-mart.**

In *Whelan v. Van Natta*, 382 S.W.2d 205 (Ky. 1964), the plaintiff sued a grocery store owner after he fell into an open stair well in the floor of the grocery storage room. The store was in the front part of the building and the storage room was in the rear of the building. A wall divided the two areas and a doorway connected them. *Id*. at 205.

The plaintiff came to the store to buy cigarettes, bought them, and then asked the store owner about a box for his son. The store owner was busy and replied, "Go back in the back room. You will find some back there." *Id*. at 205-06. The plaintiff went into the storage room and fell into the stair well. *Id*. at 206. The issue was whether the plaintiff was an invitee or licensee when he entered the storage room. The court quoted the following from Restatement (Second) of Torts § 332, comment 1:

> The possessor of land is subject to liability to another as an invitee only for harm sustained while he is on the land within the scope of his invitation. Thus an invitee ceases to be an invitee after the expiration of a reasonable time within which to accomplish the purpose for which he is invited to enter, or to remain. Whether at the expiration of that time he becomes a trespasser or a licensee will depend upon whether the possessor does or does not consent to his remaining on the land.
>
> Likewise, the visitor has the status of an invitee only while he is on the part of the land to which his invitation extends-or in other words, the part of the land upon which the possessor gives him reason to believe that his presence is desired for the purpose for which he has come. In determining the area included within the invitation, the purpose for which the land is held open, or the particular business purpose for which the invitation is extended, is of great importance.
>
> If the invitee goes outside of the area of his invitation, he becomes a trespasser or a licensee, depending upon whether he goes there without the consent of the possessor,

9

> or with such consent. Thus one who goes into a shop which occupies part of a building, the rest of which is used as the possessor's residence, is a trespasser if he goes into the residential part of the premises without the shopkeeper's consent; but he is a licensee if the shopkeeper permits him to go to the bathroom, or invites him to pay a social call.

*Id*. at 206-07 (internal ellipsis omitted).

The court determined that the customer was a licensee when he entered the storage room and, thus, was required to take the premises as he found them. *Id*. at 207.

In *Smith v. Trimble*, 64 S.W. 915 (Ky. 1901), which was cited by the court in *Van Natta*, a worker who was papering certain rooms of the defendant's house, went on to a balcony in an adjacent room and the balcony fell. *Id*. at 915. In determining whether the defendant was liable for the worker's injuries, the court noted that, "[i]t was not necessary to use this balcony in going to or from the rooms upon which [the plaintiff] was at work, but he did use it, without the knowledge or consent of [the defendant], for his [the plaintiff's] greater convenience in calling to a fellow workman below." *Id*. The court determined:

> [The plaintiff,] while engaged in that work, in using such parts of [the defendant's] premises as were reasonably necessary to enable him to do his work, was on the premises under the assurance in law by [the defendant] that such parts so necessarily used were reasonably safe for the purposes of such use. But beyond that [the defendant] owed [the plaintiff] no duty greater than to a stranger or trespasser. And when [the plaintiff], without invitation or knowledge of the owner, went into or upon other parts of the premises, not necessary for the performance of his labor, he assumed all the risks of doing so. He was neither required, expected, nor allured to be at the place where he was injured, and consequently [the defendant] was under no duty to him to provide there a place of safety.

*Id*. at 915.

In *Commonwealth v. Henderson's Guardian*, 53 S.W.2d 694 (Ky. 1932), also cited by the court in *Van Natta*, a young boy was injured when some dynamite caps exploded in a garage owned

10

by the state. *Id*. at 695. The boy was on the premises collecting materials to sell to junk dealers. He was doing so, "in the absence of any state employee, and without invitation or permission so to do." *Id*. Among other items, the boy found some dynamite caps which exploded and injured the boy when he lit a match to remove dirt from one of the caps. *Id*.

The state argued the boy was a trespasser, while his guardians argued he was a licensee. *Id*. at 696. The guardians cited evidence that children were accustomed to playing upon the premises. But the court determined that evidence "could only be effective as tending to establish a license to children to play. There is no evidence that these boys or any other person or persons ever before gathered junk upon the property in question or that the highway commission or its agents or servants expressly or impliedly invited such act by permission, consent, acquiescence, or otherwise." *Id*.

The court further determined that, "[e]ven as a licensee to play upon the grounds, the injured boy could exercise only such rights and privileges as were granted by the license, and, when he exceeded those privileges and proceeded upon the premises to search for and appropriate to himself articles belonging to the owner of the property, he became a trespasser." *Id*.

This case is different than *Van Natta* in that Wal-mart did not expressly consent to Mrs. Miracle entering the grocery receiving dock door behind the store. In the Plaintiff's response to Wal-mart's Motion for Summary Judgment, however, they assert that Wal-mart impliedly acquiesced to her entering through the door. (Rec. No. 23, Response at 5).

First, the Plaintiffs cite the following testimony from Mrs. Miracle's deposition:

Q: Now, have you gone to the back of Wal-mart ever before to get boxes?

A: I think I've drove around through there before, but not that I can remember. When the Wal-mart was over there on the other side I think I went a long time ago and got boxes there if I ain't (sic) mistaken.

11

(Rec. No. 22, P. Miracle Dep. at 33).

"Habitual or customary use of property for a particular purpose, without objection from the owner or occupant, may give rise to an implication of consent to such use to the extent that the users have the status of licensees, where such habitual use or custom has existed to the knowledge of the owner or occupant and has been accepted or acquiesced in by him." *Bradford v. Clifton*, 379 S.W.2d 249, 250 (Ky. 1964); *See also Louisville and Nashville Railroad Company v. Blevins*, 293 S.W.2d 246, 249 (Ky.1956).

However, Mrs. Miracle's testimony is not evidence of the habitual and open entrance by the public into the grocery receiving dock door behind Wal-mart. Nor does Mrs. Miracle point to any other such evidence in the record. Mrs. Miracle does not even expressly remember ever going behind Wal-mart before the day of the incident.

Second, the Plaintiffs assert that Wal-mart impliedly acquiesced to Mrs. Miracle entering the rear grocery receiving dock door because she was instructed by the unknown man in the truck to press the bell for service. Nevertheless, the Plaintiffs have pointed to no evidence in the record that the man was even a Wal-mart employee. Mrs. Miracle herself testified that she did not know if the man worked for Wal-mart. (Rec. No. 22, P. Miracle Dep. at 32-33).

Third, the Plaintiffs assert that Wal-mart impliedly acquiesced to Mrs. Miracle entering the rear grocery receiving dock door because she did not see any signs indicating that she was not permitted to go behind the store. However, the Plaintiffs have cited no cases indicating that, where there are no signs prohibiting the public from entering on property, all who enter are licensees. Wal-mart may have failed to manifestly object to the public's entrance into the rear grocery receiving dock door, but this does not, by itself, constitute implied consent. Again, there is no evidence that

12

the public habitually and openly entered the rear grocery receiving dock door such as is necessary to establish Wal-mart's implied consent to the use of the door by the public.

Fourth, the Plaintiffs assert that Wal-mart impliedly acquiesced to Mrs. Miracle's entrance into the receiving dock door "when the Wal-mart employee opened the door in response to the door buzzer." (Rec. No. 23, Response at 5). It is undisputed, however, that, the Wal-mart employee did not open the door in response to Mrs. Miracle ringing the door buzzer. Instead, a Wal-mart vendor rang the buzzer and Mrs. Miracle followed him through the door.

The Plaintiffs seem to argue that it should not matter that Mrs. Miracle did not actually ring the buzzer because Cornelius testified that she did not know who was waiting outside the door. Thus, the Plaintiffs seem to argue, the opening of the door was not just an invitation for the ringer to enter, but an invitation for whomever might be standing outside to enter, whether vendor or not.

However, it cannot be inferred from the opening of the door by the Wal-mart employees that they were impliedly inviting Mrs. Miracle to enter the door when the evidence shows they had no idea she was standing outside the door and no reason to know that she would be. Further, it cannot be inferred from the opening of the door by the Wal-mart employees that all members of the public were invited to enter the door when the evidence shows that the only people who had ever rung the bell were vendors. The Wal-mart employees had no reason to anticipate Mrs. Miracle's presence at the receiving dock door. Accordingly, it cannot be inferred that, when the employees opened the door in response to a vendor ringing the bell, they were impliedly inviting Mrs. Miracle or any person to enter other than the vendor who rang the bell.

The Plaintiffs have cited no evidence from which a jury could infer that Wal-mart expressly or impliedly invited Mrs. Miracle to enter the grocery receiving dock door behind its store in

London, Kentucky. Instead, the only evidence in the record is that Mrs. Miracle entered the door without any right, lawful authority or invitation, either expressed or implied. Accordingly, Wal-mart can only be liable for injuries which it intentionally inflicted upon Mrs. Miracle and the Plaintiffs' negligence claim against Wal- mart must be dismissed.[3] Because the sole claim in the Plaintiffs' Complaint is the negligence claim, the Complaint must be dismissed in its entirety.

IV. CONCLUSION.

For all these reasons, the Court hereby ORDERS as follows:

1) The Defendant's Motion for Summary Judgment (DE 18) is GRANTED;

2) the Plaintiffs' Complaint is DISMISSED; and

3) all other pending motions in this matter are DENIED as moot.

Dated this 15th day of April, 2009.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge

---

[3] The Plaintiffs assert only a negligence claim against Wal-mart and do not assert a claim that Wal-mart intentionally inflicted injury upon Mrs. Miracle. Further, in its Motion for Summary Judgment, Wal-mart argues that there is no evidence that Wal-mart intentionally inflicted injury upon Mrs. Miracle and, in their response, the Plaintiffs do not cite any such evidence nor do they even argue that any such evidence exists.